**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JANE DOE YD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-25-2841** |
| **BOARD OF TRUSTEES OF MOUNT SAINT MARY'S UNIVERSITY, et al.,** | * | |
| | * | |
| **Defendants.** | | |

* * * * * * * * * * * * *

**MEMORANDUM**

Pending before the Court is a Motion to Dismiss filed by Defendants Board of Trustees of Mount Saint Mary's University and Mount Saint Mary's University, Inc. (ECF No. 29). The Motion has been fully briefed (*see* ECF Nos. 30, 31) and no hearing is required. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be denied in part and granted in part. Count I alleging a Title IX violation will survive, and Counts II–IV alleging negligence will be dismissed.

## I. Background

Plaintiff Jane Doe YD—who has been granted leave to proceed pseudonymously (ECF No. 20)—filed suit on August 29, 2025, alleging sex discrimination in violation of Title IX of the Education Amendments of 1972 ("Title IX") and negligence against two institutional defendants—the Board of Trustees of Mount Saint Mary's University and Mount Saint Mary's University, Inc. ("MSM") (together, the "Mount Defendants")—and alleging battery and intentional infliction of emotional distress against an individual defendant—Bokassa Baruani. (ECF No. 1.) On April 23, 2026, she filed an Amended Complaint, which is now operative. (ECF No. 26.) Despite having been timely served (ECF No. 28), Defendant Baruani has not appeared in this action.

Plaintiff's claims arise out of allegations that Defendant Baruani sexually assaulted her "on and around Defendant MSM's campus" while they were both students. (ECF No. 26 ¶¶ 1, 2.) Plaintiff alleges that:

> Prior to Plaintiff Doe YD's transfer to the college, sexual assault by members of the Rugby team against young female students was known to Defendant MSM and/or Defendant Board, perpetuated by Defendant Baruani and at least one other member of the team. In addition to assaults perpetrated by members of the Rugby team, Defendant MSM and/or Defendant Board were also aware of wide-spread allegations of sexual abuse throughout the university community at large, and were deliberately indifferent to such allegations.

(*Id.* ¶ 15.) As described in more detail below, Plaintiff alleges that, prior to her enrollment and prior to her assaults by Defendant Baruani, several students made reports of assaults by members of the rugby team, including Defendant Baruani. The Court first summarizes the allegations as they relate to Plaintiff, and then summarizes the allegations as they relate to other students.

Plaintiff transferred to MSM in August of 2022 and became friends with Defendant Baruani in her first few weeks as a student there. (*Id.* ¶ 14.) Defendant Baruani "began pressuring Plaintiff YD to become sexually involved with him [but] Plaintiff Doe YD rejected these advances and informed Defendant Baruani that she wanted their relationship to remain platonic." (*Id.* ¶ 32.) Despite this, Plaintiff alleges that Defendant Baruani sexually assaulted her three times.

First, in September or October of 2022, Plaintiff alleges that in his dorm room on campus, "Defendant Baruani forcibly sexually assaulted and raped Plaintiff Doe YD, including, but not limited to, penetrating her vagina with his penis, groping, and other unwanted touching." (*Id.* ¶ 33–34.)

Second, on or around November 1, 2022, Plaintiff and Defendant Baruani took Plaintiff's car to purchase food. (*Id.* ¶ 36.) While parked, "Defendant Baruani physically forced Plaintiff Doe YD into the backseat of her car against her will and sexually assaulted and raped her for the second time." (*Id.*) "Plaintiff Doe YD began distancing herself from Defendant Baruani in private

and public areas" (*id.* ¶ 37) and asked him to "obtain medical testing for sexually transmitted diseases" (*id.* ¶ 38).

Third, when Defendant Baruani told Plaintiff that he needed to discuss his medical test results with her, Plaintiff met him outside her dorm room "in a public setting on campus in an attempt to ensure her safety," and they took a walk and he "communicated that his test results were negative." (*Id.* ¶ 39–41.) Near the campus water tower, "Defendant Baruani sexually assaulted Plaintiff YD again, groping her and touching her without her consent." (*Id.* ¶ 41.) Plaintiff "was able to fight off Defendant Baruani and returned to her dorm room safely before the assault escalated." (*Id.*) Plaintiff cut off all contact with Defendant Baruani after this incident. (*Id.*)

Further, Plaintiff alleges that in the Spring of 2023, "Defendant Baruani was waiting outside of her room, seemingly intoxicated." (*Id.* ¶ 43.) Plaintiff alleges that, "[i]n fear of another altercation with Defendant Baruani, Plaintiff Doe YD agreed to escort Defendant Baruani to another dormitory hall where a mutual friend resided." (*Id.*) Then, after Plaintiff left, "Defendant Baruani proceeded to violently sexually and physically assault another student[.]" (*Id.* ¶ 45.) Local law enforcement was called after this student "was found outside of her own dormitory room with injuries," and a Title IX investigation was opened. (*Id.* ¶ 46.)

During the investigation, Plaintiff spoke with Greg Kuester, the university's Title IX Coordinator, "regarding Defendant Baruani's assaults" and he told her that "because Defendant Baruani had been removed from campus, there was no need to conduct a full Title IX investigation. He also assured Plaintiff Doe YD that her identity would remain confidential, yet her name was included in a letter [to] Defendant Baruani." (*Id.* ¶ 48.) Plaintiff left the university in the spring of 2023 "as a result of her assaults and the exposure of her identity in the investigations." (*Id.* ¶ 49.) She moved to Florida for a period of time to distance herself, she attended therapy, and she re-enrolled in the spring of 2024. (*Id.*)

Plaintiff alleges that, prior to her assaults by Defendant Baruani, the Mount Defendants "had actual knowledge and notice" that Defendant Baruani and other members of the rugby team "had a history of sexually assaulting and/or harassing other female students on campus and that this conduct rose to the level of sexual discrimination." (*Id.* ¶¶ 3–4.) She alleges that the Mount Defendants "acted with deliberate indifference" and "failed to act reasonably" given this knowledge "before, during, and after Plaintiff Doe YD was assaulted." (*Id.*)

Plaintiff alleges that a 2023 MSM report acknowledges twelve reported cases of rape and fourteen reported cases of fondling on campus property from 2020 to 2022 (*id.* ¶ 19), and that the Defendants acted with negligence and/or deliberate indifference responding thereto (*id.* ¶ 20). This failure to properly respond "allowed members of the Rugby team, specifically including but not limited to Defendant Baruani, to repeatedly sexually assault and harass other students on campus without fear of punishment or retribution." (*Id.* ¶ 20.)

More specifically, Plaintiff attributes knowledge of at least four incidents of sexual assault to the Defendants preceding Defendant Baruani's sexual assault of her. One female student, referred to as "Jane Doe KW," alleged that she was sexually assaulted by a member of the rugby team, J.H., in her dormitory apartment on campus in January or February 2021, and filed a report to Mr. Kuester in the spring of 2022 after she learned that J.H. was accused of assaulting another female student. (*Id.* ¶¶ 17, 18.) Mr. Kuester allegedly informed Jane Doe KW that "there was little he could do" and "declined to investigate, noting J.H. would soon graduate and leave campus." (*Id.* ¶ 18.)

A second female student, referred to as "JC," alleged that Defendant Baruani sexually assaulted her in 2020, which she reported to Mr. Kuester in the fall of 2021. (*Id.* ¶ 23.) JC allegedly also reported that Defendant Baruani and other members of the rugby team "were sexually harassing and/or sexually assaulting other female students on campus." (*Id.* ¶ 24.) Mr. Kuester

allegedly discouraged JC from formally complaining. (*Id.*) "Eventually, mutual stay-away orders between JC and Defendant Baruani were issued," though "[i]t is unclear what, if any, discipline Defendant MSM administered to Defendant Baruani" after this incident. (*Id.* ¶ 25.)

A third female student, referred to as "EN," alleged that she was raped by another member of the rugby team in the weeks before the Fall 2021 semester. (*Id.* ¶ 26.) "[T]he University was immediately made aware of this situation and only investigated the allegations as it related to the perpetrator of the assault against EN; there was no investigation into the conduct of the rest of the Rugby team, including but not limited to Defendant Baruani." (*Id.* ¶ 26.)

Finally, "a female student," not referred to with any initials, alleged that a member of the rugby team sexually assaulted and/or harassed her, and was then "harassed by the Rugby team on campus, including in the dorms," with the "inten[t] to threaten, intimidate, and otherwise discourage other victims from coming forward." (*Id.* ¶ 27.) "This harassment was open and obvious to individuals with authority to institute corrective measures," including Mr. Kuester and others. (*Id.*)

Plaintiff alleges that Mount Defendants "took no action to prevent sexual assaults committed by members of the Rugby team against female students, nor did they take any steps to deter, prevent, or rectify harassment of accusers by members of the Rugby team." (*Id.* ¶ 28.) Despite knowing that "Defendant Baruani was a danger to female students and had perpetrated sexual assaults and/or sexual harassment on Mount Saint Mary's campus, [the Mount Defendants] failed to take any reasonable preventive action or institute corrective measures." (*Id.* ¶ 58.)

On the basis of these allegations, Plaintiff brings four counts against the Mount Defendants: a Title IX claim (Count I) and three negligence claims based upon the three alleged instances of assault (Counts II–IV). She also brought claims against Defendant Baruani.

The Defendants argue that Plaintiff's claims against them should be dismissed for several reasons. Plaintiff's Title IX claim fails, they argue, because she fails to sufficiently plead that the Defendants had actual notice of the alleged sexual harassment against her or that they acted with deliberate indifference to it. And Plaintiff's negligence claims fail, they claim, because she fails to sufficiently plead that the Defendants had a duty to prevent the alleged assaults, that the assaults were legally foreseeable, or that they breached any duty they had.

## II. Legal Standards

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Viewed through that lens, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). However, a plaintiff need not include "detailed factual allegations," *Twombly*, 550 U.S. at 555, and federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346

(4th.Cir. 2011).

## III. Analysis

For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part. It will be denied as to the Title IX claim and granted as to the three negligence claims.

### A. Count I: Sex Discrimination Under Title IX

Defendants argue that Plaintiff fails to state a cause of action pursuant to Title IX. The Court will deny the Mount Defendants' Motion to Dismiss as to this claim.

"The Supreme Court has recognized that Title IX encompasses claims of student-on-student sexual harassment, if an educational institution acts with deliberate indifference to known acts of such harassment in its programs or activities." *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 566 (4th Cir. 2025) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639 (1999)). To succeed on such a claim:

> [A] plaintiff must satisfy four elements. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). Those elements are: (1) that the educational institution receives federal funds; (2) that the plaintiff "was subjected to harassment based on her sex"; (3) that "the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity"; and (4) that "there is a basis for imputing liability to the institution." *Id.*

*Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018). Plaintiff spends much of her Opposition discussing the third element—the severity of the harassment. (*See* ECF No. 30-1 at 8–11.) However, Defendants contest only the fourth element—that there is a basis for imputing liability to the institution. (*See* ECF No. 31 at 3 ("The key issues before the Court are whether the Mount Defendants were on notice and exhibited deliberate indifference following notice of the alleged harassment.").) The Court concludes that Plaintiff has sufficiently alleged the first three elements and focuses its analysis on the fourth element.

With respect to this fourth element, "[a]n institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." *Jennings*, 482 F.3d at 700 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).) As the Fourth Circuit has recently explained:

> The report need not identify "that a particular student was being [sexually harassed]," but it must allege that a student "was currently" being sexually harassed. *Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001); *accord Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 265 (4th Cir. 2021).
>
> Reports that support only "a general, *substantial risk* of—or the *potential* for—ongoing or future misconduct" cannot provide actual notice of "current [sexual harassment]." *Fairfax Cnty.*, 1 F.4th at 265 (cleaned up).

*Doe v. N.C. State Univ.*, 125 F.4th 498, 504–05 (4th Cir. 2025) (emphasis in original).

**1. Actual Notice**

The Court concludes that Plaintiff has sufficiently alleged a Title IX claim. Critical to the Court's conclusion that the Title IX claim can move forward are Plaintiff's allegations concerning another female student, JC, who reported a 2020 assault by Defendant Baruani in the fall of 2021, prior to Plaintiff's assaults by Defendant Baruani. (*See* ECF No. 26 ¶ 23–25.) Plaintiff alleged that:

> Upon information and belief, JC contacted Defendant MSM's Title IX Coordinator, Greg Kuester, to report not only her abuse, but also that Defendant Baruani and his Rugby teammates were sexually harassing and/or sexually assaulting other female students on campus. JC was discouraged by Coordinator Kuester to formally complain. Eventually, mutual stay-away orders between JC and Defendant Baruani were issued after several months of delay, thereby causing JC to believe that her complaint was not being taken seriously and that she was being punished for her conduct.

(*Id.* ¶ 24.) Plaintiff goes on to allege that Defendant Baruani remained a student and on campus despite the allegations by JC. (*Id.* ¶ 25.)

These allegations are similar to those in *Doe v. North Carolina State University*, 125 F.4th 498 (4th Cir. 2025). There, the plaintiff alleged that he was a student from 2020 to 2021 and had been sexually assaulted by a university staff member, Robert Murphy. *Id.* at 501–02. The plaintiff also alleged that "[i]n early 2016, Head Soccer Coach Kelly Findley told Senior Associate Athletic Director Sherard Clinkscales that Murphy was engaging in what he suspected was sexual grooming of male student-athletes." *Id.* at 502 (internal quotation marks and alterations omitted). The Court of Appeals concluded that Findley's 2016 report provided adequate notice with respect to plaintiff's assault, rejecting the university's contrary argument. *Id.* at 506–07. As the Fourth Circuit explained:

> When an institution receives actual notice, its duty to investigate or to otherwise act is triggered. *Fairfax Cnty.*, 1 F.4th at 268 (citing *Davis*, 526 U.S. at 649–50). Actual notice requires "that the school [be] aware of an allegation that [an employee] [is] *currently* [sexually harassing] a student." *Id.* at 265. "[C]urrently" means when an allegation of sexual harassment is made—not necessarily, as the university suggests, at the time of the plaintiff's harassment.
>
> To hold otherwise would be inconsistent with the deliberate indifference theory of liability under Title IX: Under the university's interpretation, it would not be enough for a plaintiff to show that his university was deliberately indifferent to a prior report of then-occurring sexual harassment by his harasser. Instead, he would have to show that his university *also* had actual notice of sexual harassment by his harasser at the time of the plaintiff's harassment, even though the university's deliberate indifference to the prior report led to his harassment. *Davis*, 526 U.S. at 645. That is not the law.

*Id.* at 507 (emphasis in original).

Here, Plaintiff has alleged that, in 2021, JC reported not only her own assault by Baruani but also that "Defendant Baruani and his Rugby teammates were sexually harassing and/or sexually assaulting other female students on campus." (ECF No. 26 ¶ 24.) Thus, Plaintiff has sufficiently alleged that Defendants had actual knowledge of allegations Defendant Baruani was currently harassing or assaulting female students when JC made her report. Pursuant to *North*

*Carolina State*, Plaintiff was not required to also plead that the Mount Defendants also had notice of sexual harassment at the time of her harassment.

Defendants incorrectly state that Plaintiff alleges only that JC reported "sexual allegations," suggesting that the allegations in JC's report were too vague to put them on notice. (ECF No. 29-1 at 16; *see also id.* at 24 (also referencing "sexual allegations"); *id.* at 26 (same).) Defendants apparently misread the Amended Complaint. The Amended Complaint alleges that JC reported "sexual *assault* allegations." (ECF No. 26 ¶ 23 (emphasis added).) This is sufficient to put Defendants on notice.

Further, the Court does not find compelling Defendants' hyperbolic argument with respect to JC's report that:

> If an isolated "report" were sufficient to establish a duty on the part of a university, this would impose an obligation to warn other members of the campus community of the respondent student's alleged conduct – regardless of whether . . . the university found the report substantiated and without any regard for the respondent student's confidentiality rights. Alternatively, it would create a duty on the part of the university to expel or suspend respondent students upon nothing more than another student's allegation.

(ECF No. 29-1 at 17.) In the face of actual notice, the Mount Defendants are simply not permitted to be deliberately indifferent; they are not—as they suggest—required to warn members of the community or expel a student regardless of the outcome of any investigation. Further, the Mount Defendants' suggestion that that a single report of assault is insufficient to establish a duty on them is incorrect. *See Fairfax Cnty.*, 1 F.4th at 274 ("[A] school may be held liable under Title IX based on a single, pre-notice incident of severe sexual harassment, where the school's deliberate indifference to that incident made the plaintiff more vulnerable to future harassment[.]").

A few notes on Plaintiff's arguments: With respect to the more general allegations regarding sexual assaults on campus and allegations concerning other rugby players, Plaintiff has not cited any authority supporting her argument that these events could provide the requisite Title

IX notice to the Mount Defendants. To the extent Plaintiff continues to rely on these allegations in later stages of the litigation, she must provide authority supporting her view that these facts—if true—could have put the Defendants on notice for Title IX purposes. In addition, to the extent Plaintiff seeks to hold the Mount Defendants liable under Title IX for any purported deliberate indifference in the face of her *own* reports of sexual assault, she must cite authority supporting that view, given that she alleges that Defendant Baruani had already been removed from campus when she reported her assaults to Mr. Kuester. Finally, Plaintiff's suggestions that "constructive" knowledge in the Title IX context is sufficient misses the mark. *See Fairfax Cnty.* 1 F.4th at 265.[1]

**2. Failure to Adequately Respond / Deliberate Indifference**

The Mount Defendants also argue that Plaintiff does not sufficiently allege deliberate indifference. They do not carry their burden on this point.

"Under Title IX, a school acts with deliberate indifference where its response to the alleged harassment or the lack of any such response is clearly unreasonable in light of the known circumstances." *Fairfax Cnty*, 1 F.4th at 271 (cleaned up) (quoting *Davis*, 526 U.S. at 648). Although this is a "high standard" and requires more than "mere negligence," "half-hearted investigation or remedial action will [not] suffice to shield a school from liability." *Id.* (citations and internation quotation marks omitted). Further, "the deliberate indifference must, at a

[1] Plaintiff does not cite particularly instructive case law in her Opposition. For example, she cites *Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019), but that case is inapposite. There, two plaintiffs alleged that they were assaulted by other students at their university, that they reported the assaults to the school, that the school did not take action in response to the assaults, and that as a result of that inaction, they suffered injuries such as worsening grades, not participating in campus activities, and emotional harms. *See id.* at 107 ("[T]hey allege that KSU violated Title IX's ban against sex discrimination by being deliberately indifferent after Plaintiffs reported to KSU that other students had raped them, and that deliberate indifference caused Plaintiffs subsequently to be deprived of educational benefits that were available to other students." (emphasis in original).)

This case is different for two key reasons. First, Plaintiff alleges that the Mount Defendants had actual notice *before* her assaults in the form of notice by other students of similar assaults. Second, the plaintiffs in *Farmer* alleged that the defendant school was deliberately indifferent to plaintiffs' own allegations of assault and that such deliberate indifference put them at risk for future harm. Here, however, when Plaintiff reported her assaults to the school, Baruani had already been removed from campus, so it is not clear how she was at risk of future harm after she made her reports.

minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (citation and internal quotation marks omitted).

Plaintiff has sufficiently alleged deliberate indifference that made her vulnerable to the sexual assaults by Defendant Baruani. She alleged that:

> JC was discouraged by Coordinator Kuester to formally complain. Eventually, mutual stay-away orders between JC and Defendant Baruani were issued after several months of delay, thereby causing JC to believe that her complaint was not being taken seriously and that she was being punished for her conduct.
>
> Upon information and belief, Defendant Baruani remained a student despite these incidents and allegations and continued to cause assault other students on campus. It is unclear what, if any, discipline Defendant MSM administered to Defendant Baruani following the credible allegations of JC. However, what is clear is that Defendant Baruani, with the permission of Defendant MSM and Defendant Board, remained on campus where he continued to sexually assault other female students, including Plaintiff Doe YD.

(ECF No. 26 ¶¶ 24–25.) She also alleged that, it was "common knowledge" that, in the face of a Title IX investigation, "nothing would happen except a no-contact order." (*Id.* ¶ 21.) This is sufficient to allege that the Mount Defendants' investigations and remedial actions were clearly unreasonable. Whether the response by the Mount Defendants was indeed unreasonable is a question of fact for a later stage of this litigation. *See Fairfax Cnty.*, 1 F.4th at 271–73 (on summary judgment, discussing facts a jury could take into account in determining whether school officials' response to a report of sexual assault was clearly unreasonable, including that "a jury could reasonably conclude that the school officials improperly trivialized and dismissed the reports of sexual assault").

The Mount Defendants argue that "[t]here is no caselaw or authority that would permit an allegation that the Mount Defendants were deliberately indifferent to the alleged reports by K.W., E.N., or J.C. for each of their own alleged assaults to substitute in here, and result in a finding that the Mount Defendants were deliberately indifferent to Plaintiff's alleged harassment." (ECF No.

29-1 at 17–18.) However, given that the Court has concluded that JC's report provided the requisite actual notice pursuant to Title IX, the question is not whether Defendants were deliberately indifferent to Plaintiff's report of her assaults, it is whether they were deliberately indifferent to JC's report, which in turn made Plaintiff more vulnerable to an assault by Baruani. The Mount Defendants make no arguments on that score. And, as previously discussed, the Fourth Circuit *has* found that it is sufficient for "plaintiff to show that his university was deliberately indifferent to a prior report of then-occurring sexual harassment by his harasser" and the prior report need not have concerned the plaintiff himself. *See N.C. State Univ.*, 125 F.4th at 507. As discussed above, JC's report (which was made prior to Plaintiff's assaults) did not only involve an allegation of her own assault, it also included allegations of then-current ongoing assaults by Defendant Baruani. Thus, the Mount Defendants can be held liable for Plaintiff's assault by Defendant Baruani pursuant to Title IX to the extent they were deliberately indifferent to JC's earlier report.

Thus, the Mount Defendants' Motion to Dismiss will be denied to the extent that it seeks to dismiss Count I.

**3. Counts II–IV: Negligence**

Defendants argue that Plaintiff fails to sufficiently allege negligence in Counts II–IV. Those counts each involve one instance of alleged sexual assault by Defendant Baruani. Count II relates to the assault that occurred in Baruani's dorm room, Count III relates to the assault that occurred off campus in Plaintiff's car, and Count IV relates to the assault that occurred on campus, near the campus water tower. Defendants argue that Plaintiff fails to sufficiently allege that they owed her a duty and that she fails to allege that the assaults were legally foreseeable. For the reasons set forth below, the negligence claims will be dismissed.

Under Maryland law, "[a] cause of action in negligence must demonstrate (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rhaney v. Univ. Of Md. E. Shore*, 880 A.2d 357, 363–64 (Md. 2005) (citation and internal quotation marks omitted). "There is no duty generally to control the conduct of a third person so as to prevent him or her from causing physical harm by criminal acts or intentional torts, absent a special relationship." *Id.* at 364. "[A] 'special duty' to protect another from the acts of a third party may be established '(1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party.'" *Remsburg v. Montgomery*, 831 A.2d 18, 27 (Md. 2003) (quoting *Bobo v. State*, 697 A.2d 1371, 1376 (Md. 1997)).

**a. Count II**

Count II relates to the assault in Baruani's dorm room. That count must be dismissed. A university student is a business invitee on "campus generally in its common areas, dining halls, and academic buildings" but "upon entering his dormitory building," he is a tenant. *Rhaney*, 880 A.2d at 367. The assault here did not occur in a common area (such that Plaintiff was an invitee) or in Plaintiff's dormitory (such that Plaintiff was a tenant). Plaintiff insists that she was an invitee, but the *Rhaney* court explicitly stated that "[w]e disagree with those jurisdictions that hold the proper analysis is that of a business invitee when the incident occurs within a dormitory." *Id.* at 367 n.12. The assault occurred in Baruani's dorm room, so Plaintiff was a guest of a tenant of the Mount Defendants. Plaintiff herself states that she was a "social guest of Defendant Baruani in his dorm room at the time of the first sexual assault." (ECF No. 30-1 at 22.)

Under Maryland law, a landlord is ordinarily not liable to tenants or their guests for dangerous conditions within leased premises. *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*,

719 A.2d 119, 124 (Md. 1998) ("[A] landlord is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession."). However, "this principle . . . is not absolute and has exceptions." *Id.* Critical to the determination whether a landlord can be held liable "is the landlord's ability to exercise a degree of control over the defective or dangerous condition and to take steps to prevent injuries arising therefrom." *Id.* at 125. This principle can apply to guests as well as tenants. *Id.* For instance, the Supreme Court of Maryland (then the Court of Appeals of Maryland) held a landlord liable for a fatal dog attack on a guest that occurred within a leased apartment where "[t]he landlord retained control over the presence of a dog in the leased premises by virtue of the 'no pets' clause in the lease," given that the landlord could have instituted legal action against the tenant if she refused to abide by the clause, and where the landlord was aware of several incidents involving the dog. *Id.* at 125–26. The court there explained that "a common thread running through many of our cases involving circumstances in which landlords have been held liable . . . is the landlord's ability to exercise a degree of control over the defective or dangerous condition and to take steps to prevent injuries arising therefrom." *Id.* at 125.

The Amended Complaint does not contain sufficient allegations that the Mount Defendants retained the requisite control over Baruani's dorm room such that they had a duty vis-à-vis the Plaintiff for the assault that occurred there.[2] For instance, Plaintiff did not allege that the Mount Defendants exerted some unique control over leased premises by virtue of its status as an on-campus dorm room (as opposed to a typical apartment), or that Baruani's lease contained some provision that provided the Mount Defendants with such control. While the Court construes the

[2] Plaintiff argues that the Mount Defendants "voluntarily undertook a duty not to permit sexual discrimination on their campus" by accepting federal funding. (ECF No. 30-1 at 24.) Plaintiff cites no authority for the proposition that accepting federal funding can impose a duty on the Mount Defendants under a negligence theory (as opposed to providing a basis for Title IX liability).

facts in the light most favorable to the Plaintiff and draws all reasonable inferences therefrom, the Court would be purely speculating if it were to assume that the Mount Defendants exerted some unique control over the leased premises based upon the allegations in the Amended Complaint. Because Plaintiff does not sufficiently allege a duty on the Mount Defendants' part, Count II will be dismissed. *See Rhaney*, 880 A.2d at 364 ("Absent a duty owed to the plaintiff, as established by the plaintiff, there can be no liability in negligence and the defendant is entitled to judgment as a matter of law.").

**b. Count III**

The Court next turns to Count III—the negligence claim associated with the second assault, which occurred in Plaintiff's car. That claim must also be dismissed. Plaintiff does not allege that she and Baruani were on campus at the time of this assault, as she alleges that they "took Plaintiff Doe YD's car to purchase food." (ECF No. 26 ¶ 36; *see also* ECF No. 30-1 at 8 (explaining that they "had left campus in Plaintiff's car to find something to eat").) Plaintiff does not explain what special relationship existed between herself and the Mount Defendants such that they could be held liable for this off-campus assault under a negligence theory. Indeed, she argues in her Opposition to the Motion to Dismiss that her "claims for negligence are rooted in premises liability, which establishes a duty on the part of a property owner/operator/manager to individuals *on their premises*." (ECF No. 30-1 at 21 (emphasis added).) Count III will be dismissed. Like Count II, Plaintiff failed to sufficiently allege a duty.

**c. Count IV**

Finally, the Court turns to Count IV, the negligence claim based on Baruani's assault of Plaintiff in an on-campus common area. The relationship between Plaintiff and the Mount Defendants with respect to that assault is one of a business-invitee. *See Rhaney*, 880 A.2d at 367.

"A business owner has an affirmative duty to its invitees—'a duty to use reasonable and ordinary care to keep the premises safe and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover.'" *Id.* at 366–67 (2005) (quoting *Southland Corp. v. Griffith*, 633 A.2d 84, 89 (Md. 1993)).)

> Although the business invitor has a duty to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety . . . Like the owner, the invitee has a duty to exercise due care for his or her own safety . . . Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. App. 1997); *see also Six Flags Am., L.P. v. Gonzalez-Perdomo*, 242 A.3d 1143, 1151 (2020) (explaining that an invitee has "a duty to exercise due care for his . . . own safety," that "[t]his includes the duty to look and see what is around the invitee, and that a property owner "has no duty to warn an invitee of an open, obvious, and present danger." (internal quotation marks and citations omitted)).

For instance, in *Rhaney*, the plaintiff Anthony Rhaney was a student at the University of Maryland, and was assaulted by his roommate, Ennis Clark. Clark had previously been involved in two on-campus altercations before being assigned to be Rhaney's roommate. The court concluded that Rhaney was a tenant for purposes of determining the school's duty (and concluded that the school did not breach any duty to him), but also explained that, had Rhaney been a business invitee, he would not prevail in part because:

> There was insufficient evidence of a breach of the duty of reasonable and ordinary care to keep the premises safe or to protect Rhaney from injury caused by an unreasonable risk which Rhaney, through the exercise of ordinary care for his own safety, could not discover. As noted previously, Rhaney knew, within a few weeks of the start of the Fall 1998 semester, of Clark's involvement in the March 1998 incident. That apparently did not give him sufficient pause to request assignment to a new room or roommate. Essentially then, Rhaney knew what UMES knew about any "propensity" on Clark's part and apparently saw no reason to act to protect himself against any foreseeable danger.

*Rhaney*, 880 A.2d at 367–68.

Here, Plaintiff alleges that she was aware of the danger that Baruani posed at the time of the third assault. (*See* ECF No. 26 ¶ 40 ("Plaintiff Doe YD met Defendant Baruani outside her dorm room, in a public setting on campus in an attempt to ensure her safety.").) However, Plaintiff does not cite—and the Court has not located—any authority to suggest that *Rhaney* is not applicable to this factually analogous situation or that the general rule that a business is not required to warn an invitee of a known danger does not apply in these circumstances. The Court is therefore constrained to conclude that Count IV must be dismissed.

#### 4. Counts V–VI Against Defendant Baruani: Battery and Intentional Infliction of Emotional Distress

Defendant Baruani has not appeared in this action. His time to do so has passed. Plaintiff will be directed to file a motion for clerk's entry of default or else explain why such motion would be inappropriate.

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss will be denied in part and granted in part. A separate order follows.

DATED this 20 of August, 2026.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge